IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NAOMI S. AVALOS,

    Plaintiff,

vs.                                                                                 No. CV 15-777 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Naomi Avalos' *Motion to Reverse and Remand for Hearing with Supporting Memorandum* ("Motion"), (Doc. 23), filed April 4, 2016; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* ("Response"), (Doc. 28), filed August 5, 2016; and Plaintiff's *Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand* ("Reply"), (Doc. 30), filed August 19, 2016.

On September 8, 2011, Ms. Avalos filed claims for disability insurance benefits and supplemental security income, claiming disability beginning August 30, 2011. (Administrative Record "AR" 161–168). Both claims were denied initially on January 20, 2012, (AR 70–72, 105), and again upon reconsideration on November 21, 2012. (AR 73–104). On December 12, 2012, Ms. Avalos filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 122–23). On May 20, 2014, Ms. Avalos appeared before ALJ Myriam C. Fernandez Rice. (AR 31–69). Ms. Avalos and an impartial vocational expert ("VE"), Mary Diane Weber, testified at the hearing. (AR 31). Ms. Avalos was represented by Mark E. Hendricks. (AR 31). On June 4, 2014, ALJ Rice

issued her decision, finding that Ms. Avalos was not disabled within the meaning of the Social Security Act at any time from August 30, 2011, through the date of the decision. (AR 15). On July 2, 2014, Ms. Avalos requested review by the Appeals Council, (AR 7), which was denied on August 4, 2014, (AR 1), making ALJ Rice's decision the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to apply the correct legal standard, the Court finds that the Motion should be **GRANTED** and the case **REMANDED** to the Commissioner for further proceedings.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the Commissioner applied the correct legal standards, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show us that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v.*

*Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2015), which generally is the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" the decision. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

    II.    **Applicable Law and Sequential Evaluation Process**

For purposes of disability insurance benefits and supplemental security income, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Ms. Avalos claimed disability beginning August 30, 2011, due to persistent lower back pain, arthritis in her back, issues with her thyroid, and depression. (AR 201). Ms. Avalos alleged that her initial disability was caused by aggravating an existing back injury at work in August, 2011. (AR 315). Ms. Avalos also has degenerative joint disease in her left knee, carpal tunnel syndrome in her right wrist, and a mood disorder.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

(AR 36). Ms. Avalos testified that on a typical day, she can do some household chores with the help of pain medication if she takes frequent breaks. (AR 36–40). But, she experiences more pain the next day, which forces her to be sedentary. (AR 40–42). Ms. Avalos stated that her pain level while taking medication is seven out of ten. (AR 42–43). Ms. Avalos further testified that she can't sit for long periods of time before her back begins aching, and that she would need a fifteen to twenty minute break for every hour of sitting. (AR 43–47).

Ms. Avalos submitted numerous medical records documenting treatment for her impairments. Ms. Avalos introduced evidence of treatment for her back pain at Las Cruces Orthopedic Associates, (AR 285–304), and the Ben Archer Health Clinic, (AR 311–19, 650–75), as well as reports from physical therapy, (AR 449–470). Ms. Avalos was also treated at the Bone and Joint Center of Southern New Mexico, where she primarily saw Fernando Ravessoud, M.D., regarding her back and knee pain. (AR 358–361, 364–67, 405, 417–423, 429–36, 447–48, 592–605, 683–84).

At step one of the SEP, the ALJ determined that Ms. Avalos had not engaged in substantial gainful activity since the date of her alleged disability. (AR 16). At step two, the ALJ found that Ms. Avalos suffered severe impairment due to her degenerative disc disease in her lower back, degenerative joint disease in her left knee, post-surgery carpal tunnel in her right wrist, mild carpal tunnel in her left wrist, and a mood disorder. (AR 16). At step three, the ALJ determined that none of Ms. Avalos' impairments, singly or in combination, met or equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (AR 17).

At step four, the ALJ assessed Ms. Avalos' RFC. (AR 19). In doing so, the ALJ stated she considered all opinion evidence in the record. (AR 19). First, the ALJ found that the objective medical evidence in the record did not strongly support Ms. Avalos' purported impairments. (AR 20). In so finding, the ALJ relied on various medical reports, including some from before Ms. Avalos' alleged disability onset date, and several opinions by consulting physicians. (AR 20). Second, the ALJ found that Ms. Avalos was "not entirely credible" and that objective medical evidence did not support Ms. Avalos' allegations regarding the intensity, persistence, and limiting effects of her impairments. (AR 21). The ALJ stated that Ms. Avalos' testimony about doing household chores and the fact that Ms. Avalos was not on psychotropic medication or in therapy indicated Ms. Avalos' symptoms were not as bad as she alleged. (AR 21).

Ultimately, the ALJ found that Ms. Avalos has the RFC to perform sedentary work with several restrictions. As for exertional restrictions, the ALJ found Ms. Avalos can: (1) stand or walk for four hours out of an eight hour workday; (2) sit for up to six hours of an eight hour workday; (3) only occasionally climb ramps or stairs and should not climb ladders, ropes, or scaffolds; (4) occasionally stoop, kneel, crouch, and crawl; (5) frequently balance; (6) frequently but not constantly perform gross manipulation with the right hand; and (7) should avoid moderate exposure to moving machinery and unprotected heights. (AR 19). The ALJ further found that Ms. Avalos can: (1) understand, remember, and execute simple instructions; (2) maintain concentration, pace, and persistence for two hours at a time; and (3) work for an additional period of time before and after regularly scheduled breaks in the morning, lunch, and afternoon. (AR 19).

Finally, the ALJ found that Ms. Avalos could not perform her past relevant work as a retail cashier, short order cook, grocery cashier/stocker, or waitress. (AR 22). The ALJ concluded, however, that Ms. Avalos can perform three jobs in significant numbers in the national economy: order clerk food and beverage; final assembler; and charge account clerk. (AR 22–23). As such, the ALJ held Ms. Avalos was not disabled for any period of time between her alleged disability onset date, August 31, 2011, and the date of the decision, June 4, 2014.

**IV.     Analysis**

On appeal, Ms. Avalos argues that the ALJ's decision should be reversed because: (1) the ALJ's RFC finding was incomplete and contrary to the substantial evidence in the record; (2) the ALJ failed to perform a treating physician analysis of Ms. Avalos' orthopedic surgeon, Dr. Ravessoud; (3) the ALJ relied on VE testimony that was inconsistent with the Dictionary of Occupation Titles ("DOT") without explaining the reasons for the inconsistency; and (4) the ALJ failed to appropriately analyze Ms. Avalos' credibility. (Doc. 23 at 3).

The Commissioner responds that the ALJ's decision was supported by substantial evidence when viewing the record as a whole. (Doc. 28 at 7–10, 13). Specifically, the Commissioner argues that the ALJ's failure to discuss Dr. Ravessoud's medical opinions did not affect her ultimate decision because the ALJ's decision is otherwise supported by substantial evidence, including non-treating physicians' opinions. (*Id.* at 10, 12–13). The Commissioner further contends that the ALJ's credibility determination was supported by substantial evidence. (*Id.* at 13–16). Finally, the Commissioner claims the ALJ's determination of what jobs Ms. Avalos can perform

in the national economy was supported by substantial evidence because one of the three jobs the ALJ identified for Ms. Avalos was consistent with the DOT. (*Id.* at 16–17).

### A. The Treating Physician Rule

In making the RFC determination, an ALJ must consider all evidence in the record, although he is not required to discuss every piece of evidence in his decision. *Clifton v. Charter*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). However, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). In the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports his conclusion. *Clifton*, 79 F.3d at 1009; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

Specifically, the Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b) (2012). Generally, the ALJ will give more weight to the medical opinions of a claimant's treating physicians. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In deciding how much weight to give a treating source opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

First, the ALJ must determine whether a treating physician's opinion is to be accorded "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent

with other substantial evidence in the record." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

Second, if the opinion is not accorded controlling weight, "the ALJ must make clear how much weight the opinion is being given. . .and give good reasons. . .for the weight assigned." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300–01). "Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330–31 (citing *Langley*, 373 F.3d at 1120) (emphasis in original). Indeed, "even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [the Regulations]." *Langley*, 373 F.3d at 1119 (internal citations and quotations omitted). This set of factors is summarized as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300–01; *see* 20 C.F.R. §§ 404.1527(c)–(d), 416.927(c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted).

    B.  <u>The ALJ's Analysis of Dr. Ravessoud's Opinions</u>

Fernando Ravessoud, M.D., was Ms. Avalos' orthopedic surgeon. Dr. Ravessoud treated Ms. Avalos' degenerative disc disease and performed surgery on Ms. Avalos' lower back. (AR 358–361, 364–67, 405, 417–423, 429–36, 447–48, 592–605, 683–84). Dr. Ravessoud also treated Ms. Avalos' degenerative joint disease, and although other physicians treated Ms. Avalos' carpal tunnel, Dr. Ravessoud performed surgery on Ms. Avalos' right wrist. (AR 592–605, 701–02). Throughout the record, Dr. Ravessoud regularly opines about Ms. Avalos' symptoms, diagnoses, and physical limitations as a result of her impairments.

Dr. Ravessoud expressed opinions throughout the record about Ms. Avalos' degenerative disc disease. On January 16, 2012, Dr. Ravessoud observed that Ms. Avalos suffered "loss of lumbar range of motion with limitations in extension and flexion up to about 50%" and diagnosed Ms. Avalos with "long-standing degenerative disc disease including height loss." (AR 366). On May 23, 2012, Dr. Ravessoud noted that Ms. Avalos' "lumbar extension range is lacking" and was "accompanied by grimacing and paraspinal muscle guarding." (AR 358). On June 13, 2012, Dr. Ravessoud concluded Ms. Avalos "has failed conservative treatment and remains disabled." (AR 405). On June 21, 2012, Dr. Ravessoud performed surgery on Ms. Avalos' back. (AR 417–19).

On August 6, 2012, Dr. Ravessoud stated Ms. Avalos' back "shows no muscle guarding," though "[s]ome loss of lumbar extension" remained. (AR 435). On September 5, 2012, Dr. Ravessoud advised Ms. Avalos to "[r]emain off work for now" and to "[c]onsider part time hours to start when available." (AR 448). On January 23, 2013,

seven months after Ms. Avalos' surgery, Dr. Ravessoud reported that Ms. Avalos' back pain "continued to improve" and was "less than preop." (AR 592).

Dr. Ravessoud also expressed medical opinions regarding Ms. Avalos' degenerative joint disease. On January 23, 2012, Dr. Ravessoud reported Ms. Avalos experienced aches and pains around her left knee, so Dr. Ravessoud ordered an MRI of the knee. (AR 592). On February 13, 2013, after reviewing the MRI film, Dr. Ravessoud referred Ms. Avalos to have a CT scan performed on her left knee. (AR 594). On April 5, 2013, Dr. Ravessoud opined that the CT was "negative for cystic or lytic changes." (AR 596). However, on September 16, 2013, Dr. Ravessoud observed Ms. Avalos' "deep tendon reflexes" were "diminished bilaterally at the knee and ankle." (AR 602).

The ALJ did not discuss, mention, or refer to any of Dr. Ravessoud's medical opinions in her decision. The ALJ made one reference to a report authored by Dr. Ravessoud: the operative report following surgery on Ms. Avalos' right wrist. (AR 20). The ALJ did not analyze whether Dr. Ravessoud's opinions were entitled to controlling weight, nor did the ALJ explain what weight she gave Dr. Ravessoud's opinions and the reasons for the weight given. In short, the ALJ failed to follow the treating physician rule by discussing Dr. Ravessoud's opinion.

The ALJ's failure to discuss Dr. Ravessoud's opinions, including whether they were given controlling weight or why they were not, constitutes reversible legal error. *See generally Watkins*, 350 F.3d at 1300, *Doyal*, 331 F.3d at 758; *see also Kerwin v. Astrue*, No. 06-6343, 244 Fed. Appx. 880 (10th Cir. Aug. 8, 2007) (unpublished) (reversing ALJ's decision for failing to discuss examining source's opinions), *Lackey v.*

*Barnhart*, No. 04-7041, 127 Fed. Appx. 455 (10th Cir. Apr. 5, 2005) (unpublished) (reversing and remanding due to an ALJ's failure to discuss physician's opinions). As such, the Court must reverse and remand this case for further proceedings.

In her Response, the Commissioner argues that the ALJ's decision should not be reversed and remanded because the ALJ's decision is supported by substantial evidence, namely other physicians' opinions, and any omission of Dr. Ravessoud's opinions was harmless error. (Doc. 28 at 9–13) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1173 (10th Cir. 2012) and *Bales v. Colvin*, 576 Fed. Appx. 792, No. 13-5147, (10th Cir. Aug. 15, 2014) (unpublished)). The Courts finds these arguments unavailing.

First, the Court does not believe the harmless error rule applies in this case. An ALJ's error may be harmless "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly)," no reasonable factfinder could have decided differently. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (emphasis added). Here, there is no evidence in the record that the ALJ even considered Dr. Ravessoud's medical opinions. The Court therefore does not consider this case "the right exceptional circumstance" in which to invoke the harmless error rule.

Second, whether or not the ALJ's decision is supported by substantial evidence does not cure the ALJ's legal error. "In addition to a lack of substantial evidence, the [ALJ]'s failure to apply the correct legal standards, or show us that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). As discussed above, the ALJ is required to expressly discuss a treating physicians' opinions and explain the weight given to those opinions. *See* 20 C.F.R. §§ 404.1527, 416.927. The

ALJ's failure to do so is sufficient grounds for reversal, independent of whether or not the ALJ's decision is supported by other physicians' opinions. Therefore, the ALJ's failure to follow the treating physician rule with respect to Dr. Ravessoud is not harmless, but is reversible error.

### V.     Recommendation

For the reasons discussed above, the Court holds that, considering all the evidence in the record, the ALJ did not follow the correct legal standards. On remand, the ALJ is directed to properly consider and weigh Dr. Ravessoud's opinions, as well as clearly state the reasons for the weight given to Dr. Ravessoud's opinions. The Court notes but does not decide any other issues raised by Ms. Avalos as these matters would be mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that the Plaintiff's *Motion to Reverse and Remand for Hearing with Supporting Memorandum*, (Doc. 23), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE